IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

GREAT FALLS DIVISION

*******

| | |
|---|---|
| JEANETTE BIXLER, | CV 11-50-GF-CCL |
| Plaintiff, | |
| v. | |
| JACKSON NATIONAL LIFE INSURANCE COMPANY, and DOES 1 THROUGH 10, | ORDER |
| Defendants. | |

*******

Before the Court are two motions filed by Defendant Jackson National Life Insurance Company ("JNL"). First, Defendant JNL moves to consolidate this case with another complaint previously filed by Plaintiff Jeanette Bixler ("Bixler") that arises out of the same transaction: *Bixler v. NEXT Financial Group, Inc., et al.*, CV 11-2-H-CCL ("*Bixler I*"). This first motion to consolidate is unopposed by

Plaintiff. Second, Defendant JNL moves to compel arbitration and for stay of proceedings pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 2-4. The motion to compel arbitration is opposed by Plaintiff.

Motion to Consolidate

  Both *Bixler I* and *Bixler II* relate to a March 9, 2009, transaction between Bixler and Gary Falber of NEXT Financial Group, Inc., wherein Bixler allegedly entered into a security brokerage agreement (the "Client Agreement"), and Falber sold and Bixler allegedly agreed to purchase a JNL variable annuity. In *Bixler I*, Plaintiff claims that NEXT Financial Group, Inc., and Gary Falber sold an unsuitable investment product to Bixler. In this case, *Bixler II*, Plaintiff also claims that Gary Falber, acting as JNL's agents, sold an unsuitable product to Bixler. The *Bixler II* claims against JNL (the provider of the allegedly unsuitable investment product) are for (1) negligence, (2) breach of fiduciary duty, (3) constructive fraud, (4) negligent supervision, (5) insurance fraud, (6) intentional and negligent infliction of emotional distress, (7) negligence *per se*, and (8)

punitive damages.  Damages sought are similar in both cases, and Plaintiff concedes that damages obtained in one case will be offset against damages obtained in the other.

Pursuant to Fed. R. Civ. P. 42(a), this Court may consolidate cases when they involve common questions of law or fact, as is the case with *Bixler I* and *Bixler II*.  Both cases involve the same set of facts, common questions of law, and pose a risk of inconsistent adjudication on the common factual and legal issues.  Significant savings of time and prevention of duplication of effort will result from this consolidation.  The Court agrees with the parties that motion to consolidate has merit.

Accordingly,

IT IS HEREBY ORDERED that Defendant's Motion to Consolidate Cases (Doc. 6) is GRANTED.  All further docketing in this case shall be performed in *Bixler I*, CV 11-2-H-CCL.

Motion to Compel Arbitration

The Court must next consider JNL's Motion to Compel Arbitration, which is opposed by Bixler. Bixler presents three arguments in opposition. Her first argument is that JNL is not a party to her Client Agreement with NEXT Financial. Next, she argues that the arbitration clause contained in the Client Agreement is void *ab initio* because Montana law, Mont. Code Ann. § 27-5-114, prohibits arbitration clauses in agreements that relate to insurance policies or insurance contracts. Finally, Bixler argues that because Gary Falber failed to explain the arbitration clause to her, it is unenforceable.

Plaintiffs arguments are without merit. In the Client Agreement, Plaintiff agreed to arbitrate

> "**I. Any controversy arising out of or relating to my accounts, to transactions with [NEXT Financial Group, Inc.], your officers, directors, agents, employees, clearing agent, this Agreement or the breach thereof, whether such transaction or agreement was entered in prior, on, or subsequent to the date hereof, shall be settled by arbitration in accordance with the rules then in effect of the Financial Industry Regulatory Authority ("FINRA").**

(*Bixler I*, Doc. 37-4 at 3 (bolded in original).) Plaintiff's allegation that JNL sold

her an unsuitable investment product through its agent Gary Falber, a registered representative of NEXT Financial Group, is a controversy arising out of or relating to Plaintiff's account and transactions with NEXT Financial Group. Thus, Plaintiff agreed to arbitrate this controversy. In fact, the bulk of Plaintiff's claims against JNL are premised upon JNL's liability as principal for the actions of its agents, both Gary Falber and NEXT Financial Group, in selling an unsuitable investment product to Plaintiff.[1] This Court has considered Bixler's argument that JNL is not a signatory to her Client Agreement and that her agreement to arbitrate

---

[1] The Court notes that Plaintiff emphasizes that some of her claims against JNL are claims of tort and breach of contract committed directly by JNL. Primarily, these claims are premised upon the fact that over a month after Bixler signed the handwritten application to purchase the variable annuity–and after JNL had received Plaintiff's $210,000–JNL then typed up the application and mailed it to her, asking her to sign the typewritten application (which she refused to do). Plaintiff claims that this conduct by JNL (typing up the handwritten signed application and asking her to sign the typewritten document) constitutes an independent basis for direct claims against JNL. The Court is not persuaded that these claims are sufficiently dissimilar to the claims contesting the March 9, 1009, sale-purchase of the variable annuity to take Plaintiff's direct claims against JNL outside the arbitration agreement. Such claims, while devoid of reference to Falber and NEXT, are still factually and legally dependent upon the underlying transaction of March 9, 2009, between Bixler, Falber, and NEXT.

should not be applicable to her claims against JNL.

"The strong public policy in favor of arbitration does not extend to those who are not parties to an arbitration agreement...." *Comedy Club, Inc. v. Improv West Associates*, 553 F.3d 1277, 1287 (9th Cir. 2009) (*quoting Buckner v. Tamarin*, 98 Cal.App.4th 140, 119 Cal.Rptr.2d 489 (Cal.App.2.Dist. 2002)). However, "[a] contract may bind non-parties such as an intended third party beneficiary, an agent, or an assignee." *Id.* (*citing Benasra v. Marciano*, 92 Cal.App.4th 987, 991, 112 Cal.Rptr.2d 358 (Cal.App.2.Dist. 2001)). "[A] non-signatory principal has standing to enforce an arbitration clause to which his agent is bound as signatory." *See Estate of Garcia v. Stonehenge*, 1998 WL 118177, *3 (N.D. Cal. 1998) (unpublished) (*citing Leitzia v. Prudential Bache Securities, Inc.*, 802 F.2d 1185, 1187-88 (9th Cir. 1986)). Under Montana law, also, rights and liabilities that accrue to agents accrue to the principal also. Mont. Code Ann. § 28-10-601.

Permitting a nonsignatory principal defendant to rely upon the agent's arbitration clause avoids evisceration of the arbitration clause. *See CD Partners,*

*LLC v. Grizzle*, 424 F.3d 795, 798 (8th Cir. 2005) (*citing MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999)). This acknowledgment of the extraordinary relationship of principal-agent in the arbitration context also makes sense from the standpoint of the twin goals of promoting judicial economy and avoiding inconsistent judgments. It would be unwise to resolve these two such similar sets of claims in different forums. Otherwise, Bixler would be arbitrating her claims against the agent at a FINRA arbitration panel at the same time she would be litigating her claims--fundamentally premised upon the facts and law pertaining to the agent--against the principal in federal court. Furthermore, allowing JNL to enforce the arbitration clause as to Plaintiff's claims against JNL as principal does not violate Plaintiff's expectation that she will arbitrate all controversies arising from her NEXT account and transactions with NEXT Financial Group, particularly when her fundamental claim is that NEXT Financial Group wrongfully sold her an unsuitable investment product.

Next, Plaintiff argues that the arbitration clause relied upon here is void *ab initio* because of the application of Mont. Code Ann. § 27-5-114, which approves

7

of arbitration agreements generally, but excepts from that approval in subsection (c) "any agreement concerning or relating to insurance policies or annuity contracts...." This statutory provision is not relevant to the Client Agreement between Gary Falber and NEXT Financial and Bixler, for that agreement does not concern or relate to an insurance policy or an annuity contract. The Court emphasizes that the instant case does not involve a dispute between an insured and an insurance company regarding the contents of an insurance policy. The Client Agreement merely establishes the brokerage relationship between securities broker and customer. The Client Agreement, on its face, in no way states, either explicitly or implicitly, that there is to be any insurance policy or annuity contract purchased. The Court finds this statutory argument to be without merit.

Finally, Plaintiff argues that because Falber failed to explain the arbitration clause to her, it is unenforceable. Because this Court has found as a matter of fact in *Bixler I* that Gary Falber explained the arbitration clause to Bixler in detail, this argument is also without merit.

Accordingly,

IT IS HEREBY ORDERED that Defendant JNL's Motion to Stay and Compel Arbitration (Doc. 7) is GRANTED. This case is referred for arbitration to the Financial Industry Regulatory Authority, and, pursuant to 9 U.S.C. § 3, all proceedings herein are STAYED pending conclusion of the arbitration.

The Clerk shall notify counsel and FINRA of entry of this order.

Done and Dated this 14th day of March, 2012.

_____
CHARLES C. LOVELL
SENIOR UNITED STATES DISTRICT JUDGE